BUTLER *v.* STATE.

4128                                    129 S. W. 2d 226

Opinion delivered June 5, 1939.

*D. L. Grace* and *I. S. Simmons,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HOLT, J.  A jury in the Fort Smith district of the Sebastian circuit court convicted Willie Butler, appellant, of the crime of robbery and fixed his punishment at twenty-one years in the state penitentiary.

The information upon which appellant was tried charges ". . . Willie Butler, of the crime of robbery committed as follows, to-wit: The said defendant, in the county, district and state aforesaid, on the 20th day of December, 1938, did unlawfully and feloniously and forcibly and by fear and intimidation, take, steal, and carry away $15.21 from the person and pos-

session of John Backen, against the peace and dignity of the state of Arkansas."

Appellant first contends that the above information is not sufficient for the reason that it does not contain the allegation that the $15.21 was gold, silver or paper money of the value of $15.21, or that said money had any value at all. We cannot agree with appellant in this contention.

A careful search of the record in this case fails to disclose that appellant filed any demurrer to the information in question, that any action was ever taken by the trial court on any such alleged demurrer, or that any exceptions were made by appellant and preserved in this record. This court in *Boatright* v. *State*, 195 Ark. 611, 113 S. W. 2d 107, in passing upon a situation similar to that presented here, said: "The transcript does not reflect that a motion to quash the indictment was filed by appellant or that any objection was made to overruling such a motion. It is true that in the motion for a new trial appellant states the trial court erred in overruling his motion to quash the indictment. However, the record does not show that such a motion was filed or that any objection was made to overruling same."

However, if we concede that the demurrer was duly filed, presented to the trial court, overruled, and appellant's exceptions duly saved and the alleged error properly preserved in the motion for a new trial, still we are of the view that the information in the instant case is good. In 1936 the people of Arkansas under the power vested in them by Amendment No. 7 to the Constitution of this state, commonly known as the initiative and referendum amendment, initiated Act No. 3 entitled, "An Act to Amend, Modify and Improve Judicial Procedure and the Criminal Law, and for Other Purposes." Among the provisions of this Act, as initiated, are the following sections of Pope's Digest:

"Section 3851. The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. It shall not be necessary to include statement of the act or acts constituting the

offense, unless the offense cannot be charged without doing so. Nor shall it be necessary to allege that the act or acts constituting the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but the name of the offense charged in the indictment shall carry with it all such allegations. The state, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction.

"Section 3852. Form. An indictment may be substantially in the following form:

'The State of Arkansas,
            *vs.*
'John Doe.

'In the Pulaski Circuit Court.

'The grand jury of Pulaski county, in the name and by the authority of the state of Arkansas, accuse John Doe of the crime of murder in the first degree (or other crime, as the case may be), committed as follows: The said John Doe, on January 1, 1936, in Pulaski county, did murder Richard Roe, against the peace and dignity of the state of Arkansas'."

By these provisions the form of indictment has been greatly simplified and the necessary allegations materially shortened. We hold, therefore, that the allegations of the information in the instant case are sufficient even though it is not alleged therein that the $15.21 taken from John Backen was gold, silver, or paper money, or that it had any value. Since the enactment of the above legislation, such technical allegations are no longer necessary. If the defendant felt that he was not sufficiently informed as to the act or acts upon which the state relied to convict him, § 3851, *supra*, gives him a remedy by requiring the state to furnish him a bill of particulars. He made no such request in this case.

The cases cited by appellant were decided prior to the enactment of the above legislation and do not control here.

Appellant next contends that there is a variance between the charge in the information and the proof in

that the information charges that the person robbed was John Backen when the proof shows it was John Brocken.

A careful search of this record again discloses that appellant does not raise this question of variance in the trial of this cause. He did not claim that the person he robbed was any one other than John Backen named in the information. He asked no instructions on the issue of variance nor did he attempt to set out the variance between the information and proof in his motion for a new trial and to raise this issue here for the first time on appeal comes too late.

This court in *Whitney* v. *State*, 176 Ark. 771, 4 S. W. 2nd 9, said: ''The first assignment of error is an alleged variance between the indictment and proof with reference to the person killed. The indictment charged that appellant killed Sam Warren, whereas the proof showed that he killed Son Warren. No question was raised in the trial of the cause as to the identity of the person murdered. All witnesses referred to the person killed as 'Son Warren' or 'Son Morris.' Appellant did not claim in the trial that the person he killed was a different man from the man he was charged with killing. He did not ask any instruction on the issue of variance, nor set out the variance between the indictment and proof in his motion for a new trial. The issue of variance raised for the first time on this appeal was one of fact for the jury, under the rule announced by this court in the cases of *Bennett* v. *State*, 84 Ark. 97, 104 S. W. 928; *Woods* v. *State*, 123 Ark. 111, 184 S. W. 409, Ann. Cas. 1918A, 348; *Sutton* v. *State*, 67 Ark. 155, 53 S. W. 890. It is too late to raise this question for the first time on appeal. *Clayton* v. *State*, 159 Ark. 592, 252 S. W. 589; *Anderson* v. *State*, 162 Ark. 14, 257 S. W. 365.''

Appellant next contends that the evidence is not sufficient to support the verdict. This record reflects that the victim of the robbery, John Brocken, was operating the Silver street gasoline station in the city of Fort Smith, Arkansas, on December 20, 1938. Appellant, Willie Butler, entered his station at about 8:15 p. m. and inquired the way to Spiro, Oklahoma, and quoting

518

Brocken's testimony: " . . . I told him the direction to Spiro; and he asked me how was business, and I told him pretty good; and he left and came back in about thirty minutes after that, and came in and closed the door behind him, and I was reading a magazine; and he had a gun, and he said, 'Have you got any money; I want it,' and when I saw the gun I got up out of the chair, and he took the money out of my pocket, and put it in his car; and so after he got the money—the bills—he told me to open the door, that he did not want to leave any finger prints on the door, and I opened the door and he backed out; I followed him out, and in just a second he acted as if he did not know what to do; and he said 'You better run down the highway'; so I went down the highway about thirty yards; and when I heard him run and get in the car, I ran back and telephoned the police, and they came out there. . . . Q. Can you identify the man that robbed that station? A. Yes, sir. Q. Do you see him here? A. That is him there (pointing to the defendant). Mr. Grace: I object to him pointing him out. The Court: If he can identify him he may do so. Witness: It is the boy with the black hair. The court: Sitting at the table? A. Yes, sir. Q. Did you see him later? A. Yes, he came back to my station with another boy, Christmas day, and bought some gasoline; the other boy bought the gasoline, he was in the car. I put the gasoline in and went up there where the other boy was, and I saw this Butler boy in the car, just as soon as they left I ran in and called the police again. Q. What time of day was that? A. Around four or five o'clock. Q. Now, how long was it before the officers brought you to the station? A. Three days. Q. What occurred at that time? A. They brought him out and just as soon as they brought him out, I told them that was him. They asked me to make sure before they brought him out, and I told them I was positive about it, and they put him back in. . . . . Q. About how much money did he take? A. Fifteen dollars and twenty-one cents. Q. Where did you have that money? A. In my pocket; the bills were in my billfold in my back pocket. Q. He held a pistol on you at the time? A. Yes, sir.''

There was other evidence presented by the state of a corroborative nature.

Appellant's defense was that of an alibi. The question of alibi was a matter of defense offered by appellant, and the jury's finding on this question is conclusive in this court.

The case was submitted to the jury under proper instructions and we think the evidence amply sufficient to support the verdict.

No errors appearing, the judgment is affirmed.