## Alfred D. HARKNESS *v.* STATE of Arkansas

CR 78-107                                          590 S.W. 2d 277

### Opinion delivered December 3, 1979
### (In Banc)
[Rehearing denied January 7, 1980.]

*Thomas G. Montgomery,* Public Defender, and *Frank C. Elcan, II,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Alfred D. Harkness was convicted in the Crittenden County Circuit Court of burglary and attempted rape and sentenced to imprisonment for a total of thirty years.

He alleges four errors on appeal. The first regards an erroneous instruction and has merit requiring us to reverse his conviction. The others have none and will be mentioned only because they could arise on retrial.

The court allowed an in-court identification of Harkness by the alleged victim. The appellant argues that the line-up the victim saw at the police station about five days after the offense was impermissibly suggestive and tainted the later in-court identification, making it inadmissible. The victim also made a voice identification of Harkness at the same time. We have examined the record and the trial court's ruling permitting the in-court identification and hold that it passes the test laid down in *Warren* v. *State,* 261 Ark. 173, 547 S.W. 2d 392 (1977).

A police officer was allowed to read to the jury a statement that the victim said Harkness made to her when he attempted to rape her. It is argued this was hearsay and was erroneously admitted as evidence to the jury. The statement read to the jury was:

> Get up. Come with me. Get on the bed. Get your clothes off and get on the bed. I can use this gun and I will hurt you.

The statement was not hearsay because it was not admitted into evidence to prove the truth of the words stated but rather was relevant to the line-up and voice identification of Harkness made by the victim. The line-up and voice identification had been attacked but this was only part of the evidence offered by the State to prove the identification was fairly made and reliable.

A cigarette lighter found by an investigating officer in the victim's home was admitted into evidence as the defendant's. So was a statement made by Harkness when he was

shown the lighter at police headquarters. According to a police officer, Harkness said, ''That is my lighter . . . .'' It is argued that a proper chain of custody was not established for the introduction of the cigarette lighter. Harkness claimed that he left the lighter in the glove compartment of his vehicle.

The purpose of showing a chain of custody is to prove authenticity. If there is a reasonable probability the evidence is genuine, the trial court's ruling will be upheld. *Baughman* v. *State*, 265 Ark. 869, 582 S.W. 2d 4 (1979).

We find no reason to disturb the trial court's ruling regarding the cigarette lighter.

The error made which requires us to reverse this case was an erroneous instruction stating, in effect, that alibi is an affirmative defense which a defendant must prove by a preponderance of the evidence. That is wrong for two reasons. First, alibi is not an affirmative defense. Second, the State must always prove its case beyond a reasonable doubt. That burden is not shifted to the defendant because alibi is raised as a defense. This case was tried before we adopted the Arkansas Criminal Model Jury Instructions, but they correctly state the relevant rule. AMCI 4008 reads:

## ALIBI — COMMENT

While alibi instructions have often been used by trial courts in Arkansas, alibi is neither a defense nor an affirmative defense under the Arkansas Criminal Code, but rather a position the defendant may assert to create a reasonable doubt of his guilt. Therefore, no jury instruction should be given. See 21 Am. Jur. 2d, Criminal Law, § 136.

We join those authorities which have rejected the instruction given in this case. *See, e.g., Stump* v. *Bennett*, 398 F. 2d 111 (8th Cir. 1968); *Lafave & Scott, Criminal Law* § 8 (1972).

The State argues, however, there was no timely objec-

tion to this instruction. The record, as originally submitted, showed that the defendant's counsel offered objections to the alibi instruction after the jury retired. That would be too late according to our decisions. *Golden* v. *State,* 265 Ark. 99, 576 S.W. 2d 955 (1979).

When the State raised this argument, Harkness asked that we resubmit the case to the trial court to settle the record. Counsel for Harkness argued a timely objection had been made before the jury was given the instructions and that the court noted those objections but asked that counsel make his record after the jury retired. We resubmitted the case to the trial court for a hearing at which the prosecuting attorney, one of the defense counsel for Harkness and the trial judge were sworn and gave their versions of what happened. The prosecuting attorney could not swear that the objection was not properly made before the instruction was given but he was inclined to think it was not. The defense attorney was certain he had made an objection but that the court asked him to make his record after the jury deliberated. The trial judge made no finding, as he could have done, but said:

> . . . I have no memory, really, I was so bewildered and overwhelmed at this criminal term of court, my memory on it is very foggy and I really have no memory about this instruction. I have no memory of — I will say in all candor that I have found it to be a time saving device, when I pretty well have my mind made up on what instructions I am going to give, instead of consuming time while the jury is waiting, *I have asked attorneys on frequent occasions to wait and make their objections while the jury is deliberating, simply as a time saving device,* and I still feel that that is a time saving device and would not want to discourage that practice and discourage attorneys from agreeing to that by penalizing one who in good faith cooperates and then forgets to make an objection, but I just cannot say with any certainty whatsoever whether that happened in this Harkness case . . . . [Emphasis added.]

We have to give the defendant the benefit of the doubt in view of the candid remarks of the trial judge, a man of

undoubted integrity. Therefore, the case is reversed and remanded for a new trial.

Reversed and remanded.

HARRIS, C.J., not participating.